**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re:<br><br>DIETRICH'S SPECIALTY PROCESSING, LLC.<br><br>Debtor. | Chapter 11<br><br>Case No. 10- |

**DEBTOR'S MOTION FOR AN INTERIM ORDER PURSUANT TO SECTIONS 105, 361, 363 AND 364(C) AND (D) OF THE BANKRUPTCY CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (1) AUTHORIZING DEBTOR TO OBTAIN INTERIM POST-PETITION FINANCING, (2) GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE STATUS, (3) MODIFYING THE AUTOMATIC STAY, (4) AUTHORIZING DEBTOR TO ENTER INTO AGREEMENTS WITH THE VIST BANK, (5) AUTHORIZING USE OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION AND (6) PRESCRIBING FORM AND MANNER OF <u>NOTICE AND TIME FOR FINAL HEARING</u>**

Dietrich's Specialty Processing, LLC, debtor and debtor-in-possession in the above-captioned case (the "Debtor"), through its counsel Case, DiGamberardino & Lutz, P.C., hereby moves this honorable Court for an order pursuant to Sections 105, 361, 363 and 364(c) and (d) (i) authorizing Debtor to obtain interim post-petition financing; (ii) granting senior liens and priority administrative expense status; (iii) modifying the automatic stay; (iv) authorizing the Debtor to enter into agreements with VIST Bank ("VIST"); (v) authorizing the use of cash collateral and providing adequate protection; and (6) prescribing the form and manner of notice and time for final hearing, and in support thereof avers as follows:

**<u>JURISDICTION VENUE AND STATUTORY BASIS</u>**

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).

2. Venue of this case and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief requested herein are sections 105, 361, 363, 364(c)(1), 364(c)(2) and 364(c)(3) and 364(d) of title 11 of the United States Code ("Bankruptcy Code").  Such relief is warranted pursuant to Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 5070-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Local Rules").

## LOCAL RULE 1002-4 DISCLOSURES

4. **The proposed interim and final orders and the loan agreement do not include cross-collateralization clauses that provide that pre-petition debt to VIST is secured by post-petition assets that the secured party would not otherwise have security interest in by virtue of its pre-petition security agreements.**

5. **Paragraph 6 of the proposed interim and final orders associated with this Motion contains findings of fact which relate to the validity, perfection or amount of VIST's lien and outstanding debt that are binding on other parties in interest only if a proceeding challenging VIST's pre-petition debts, pre-petition financing documents and pre-petition liens is filed within sixty (60) days after the appointment of an Official Creditors Committee or seventy-five (75) days after the Petition Date if no committee is appointed.**

6. **The proposed interim and final orders and the Debtor in Possession Loan and Security Agreement contain waivers of Section 506(c) in addition to providing a professional fee carve out in the maximum amount of $198,000.**

7. **Section 13 of the Debtor in Possession Loan and Security Agreement sets forth certain Events of Default that operate to divest the Debtor of discretion in the formulation of a plan and with the extension of the exclusivity period and access to financing and other relief under the Code.**

8. **Section 9.12 of the Debtor in Possession Loan and Security Agreement prohibits the Debtor from directly or indirectly seeking to modify the financing orders, seeking priority claim status for administrative and unsecured claims, and from granting liens on any VIST collateral, except for the professional carve out and certain statutory liens.**

9. **Section 23 of the interim order and the final order contain releases from the Debtor and its successors in favor of VIST, without prejudice to the rights of a Committee to bring claims within 60 days of the appointment of a Committee.**

10. **Sections 20 and 21 of the interim order and the final order contain automatic waivers of the automatic stay under Section 362 of the Bankruptcy Code after five days written notice to the Debtor, its counsel, counsel to the Committee, counsel to any other secured creditors, the United States Trustee and the Court.**

11. **The interim order and the final order approving this Motion contemplate that VIST's liens and security interest granted to secure the post-petition financing shall**

B # 1131589 v.2

**have priority over all pre-petition liens including liens in favor of VIST and liens in favor of the United States Small Business Administration and all other secured creditors.**

## FACTS

12. On May 10, 2010 (the "Petition Date"), the Debtor filed a voluntary petition pursuant to chapter 11 of the Bankruptcy Code.

13. The Debtor will continue as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

A.  <u>Pre-Petition Financing Agreements with VIST</u>

14. Prior to the commencement of the above-captioned bankruptcy case, VIST made loans and advances, and provided other credit accommodations to and for the benefit of the Debtor, pursuant to the terms and conditions of those certain pre-petition loan documents, security agreements, mortgages, guarantees and other related agreements, documents and instruments executed and/or delivered by the Debtor with, to or in favor of VIST (all of such loan and security agreements, mortgages, guarantees, financing statements and all other related agreements, documents and instruments executed in connection therewith or related thereto, as the same have been amended and modified, being referred to collectively as the "Existing Financing Agreements").

15. The Existing Financing Agreements include, <u>inter alia</u>:

   a. that certain Variable Rate Promissory Note (Line of Credit Loan Note) dated April 18, 2006 in the original principal amount of $1,000,000;

      b.    that certain permanent Equipment Loan Note dated April 18, 2006 in the original principal amount of $1,725,000;

      c.    that certain Construction Loan Note dated April 18, 2006 in the original principal amount of $1,050,000;

      d.    that certain Permanent Equipment Loan Note dated November 1, 2006 in the original principal amount of $550,000;

      e.    that certain permanent Equipment Loan Note dated August 28, 2007 in the original principal amount of $500,000; and

      f.    that certain Variable Rate Promissory Note (Interim Equipment Loan Note) dated August 28, 2007 in the original principal amount of $200,000.

16. As security for its obligations under the Existing Financing Agreements, Debtor granted to VIST, inter alia, (a) first priority liens and security interests in all of Debtor's tangible and intangible personal property, including, without limitation, all accounts, chattel paper, commercial tort claims, deposit accounts, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, investment property, machinery and all proceeds and products thereof, (b) a first lien mortgage and subordinate lien mortgages, as well as assignments of rents and leases, on certain property known as 61 Vanguard Drive, Exeter Township, Berks County, Pennsylvania (the "Real Estate"); and (c) an Assignment of Life Insurance Policy Number 00499405.

17. The principal amount of all loans, advances and other indebtedness owed by the Debtor to VIST pursuant to the Existing Financing Agreements as of the Petition Date consists

of loans in the aggregate principal amount of not less than $ $4,396,060.85, together with interest accrued and accruing thereon and fees, costs, expenses and other charges accrued and accruing with respect thereto (the "Pre-Petition Debt").

18.     As of the Petition Date, the Pre-Petition Debt is fully secured pursuant to the Existing Financing Agreements by perfected and valid first priority security interests and liens granted by the Debtor to or for the benefit of VIST upon all of the Collateral (as defined in the Existing Financing Agreements) existing as of the time immediately prior to the filing of the petition for relief in the above-captioned case, and the post-petition proceeds and products thereof (collectively, together with any other property of the Debtor's estate in which a security interest or lien has been granted to or for the benefit of VIST prior to the filing of the petition for relief herein, the "Pre-Petition Collateral").

19.     The Debtor acknowledges the validity and enforceability of the Existing Financing Agreements as binding agreements and obligations of the Debtor.

20.     The Debtor acknowledges that the security interests and liens granted to or for the benefit of VIST on the Pre-Petition Collateral are valid, perfected, senior to all other security interests and liens upon the Pre-Petition Collateral (except for senior statutory liens, if any, arising by operation of law "Senior Encumbrances") and are valid, enforceable and non-voidable.

21.     The Debtor acknowledges that the Pre-Petition Debt constitutes allowable claims against the Debtor and is valid, enforceable and non-voidable in the amount of the Pre-Petition Debt.

B # 1131589 v.2

22.     The Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind or nature, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Debt and VIST's security interests in and liens upon the Pre-Petition Collateral, or which would in any way reduce or affect the absolute and unconditional obligation of the Debtor to pay in full, in cash, all of the Pre-Petition Debt.

23.     The United States Small Business Administration has liens in some of the Collateral subordinate in priority to the liens and security interests of VIST.

24.     Wells Fargo Financial Leasing, Inc.; South eastern Economic Development Company of Pennsylvania; Town & Country Leasing, LLC; and Mid Penn Bank Leasing Services have recorded UCC financing statements but hold interests in equipment leased to the Debtor but not owned by the Debtor.

25.     VIST's liens have priority over the interests of all other lienholders in the Collateral, other than certain statutory priming liens..

B.     <u>Relevant Provisions of Proposed Post-Petition Financing and Use of Cash Collateral</u>

26.     The Debtor requires financing and the use of cash collateral in order to have the funds necessary to pay its payroll, payroll taxes, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties, including the purchase of inventory and other general operating and working capital purchases in the ordinary course of the Debtor's business. Attached hereto as <u>Exhibit "B"</u> is a cash-flow budget prepared by the Debtor.

27. VIST is willing to permit the use of cash collateral and make such loans and advances and provide such other financial and credit accommodations on a secured basis pursuant to the terms and conditions of that certain post-petition financing agreement with Debtor (the "DIP Agreement"), which is attached hereto as Exhibit "A".

28. The Debtors are unable to secure alternative unsecured credit for working capital purposes as an administrative expense of the estate.

29. In exchange for the financing proposed to be extended under the DIP Agreement, Debtor will grant VIST valid and perfected first priority security interests and liens, subject to the terms and conditions of the Carve-Out, but otherwise superior to all other creditors of the Debtor's estate in and upon all of the existing and future assets and properties of the Debtor, whether acquired prior to, concurrently with or after the filing of the petition for relief in the above-captioned case.

30. VIST is also granted an allowed super-priority administrative claim in accordance with Section 364(c)(1) of the Bankruptcy Code having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor now in existence or hereafter incurred by Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a) and 507(b) of the Bankruptcy Code subject only to the Carve-Out.

31. VIST's security interests in and liens upon the collateral, shall not have priority over (a) Statutory Encumbrances, as defined in the DIP Agreement, (b) the fees of the Clerk of the Bankruptcy Court for the Eastern District of Pennsylvania and the Office of the United States Trustee; or (c) the Carve-Out.

B # 1131589 v.2

32. The DIP Agreement also provides that, upon entry of a Final Order approving the DIP Agreement and other Financing Agreements, no costs or expenses of administration which have or may be incurred in Debtor's Chapter 11 case, any conversion of Debtor's Chapter 11 case, or otherwise or in any future proceedings of cases related thereto, shall be charged against VIST, its claims, or the Collateral, without the prior written consent of VIST and no such consent shall be implied from any other action, inaction or acquiescence by VIST.

33. The value, if any, in any of the Collateral in excess of the amount of the DIP Loan secured by such Collateral, after satisfaction of the post-petition obligations, liabilities and indebtedness of the Debtor to VIST shall constitute additional security for the repayment of the Pre-Petition Debt and adequate protection for the use by the Debtor and the diminution in the value of the Collateral existing on the Petition Date.

34. The interim period for the DIP financing shall run from the date that an order granting the relief sought herein is entered by this Court through and including July 30, 2010.

35. The DIP Agreement further provides that in no event shall cash collateral or proceeds of loans or other extension of credit under the DIP Agreement (or any Collateral) be used to propose or support a plan of reorganization that does not provide for the indefeasible payment in full, in cash and satisfaction of all of the obligations under the DIP Agreement on the Effective Date of any such Plan or to seek relief under any provision of the Bankruptcy Code to the extent that such relief would in any way restrict or impair the rights or remedies of VIST.

36. The DIP Agreement also provides for the automatic stay provisions of Section 362 of the Bankruptcy Code to be vacated and modified to the extent necessary to permit VIST

B # 1131589 v.2

to implement the terms and conditions of the DIP Agreement, the Existing Financing Agreements and the DIP Order.

37.     Additionally, the DIP Agreement provides that, on five days written notice to the Debtor, VIST be relieved from the automatic stay upon (a) the expiration of Debtor's authority to borrow and obtain other credit accommodations from VIST; (b) failure of the Debtor to perform in any material respect of any of its obligations pursuant to the DIP Order; (c) the conversion of the case to a case under chapter 7 of the Bankruptcy Code; or (d) the occurrence of any Event of Default under the DIP Agreement or Existing Financing Agreements.

38.     Finally, the DIP Agreement provides for the release from any "lender liability" claims, any other claims, obligations and liabilities relating to the DIP Agreement or Existing Financing Agreements, against VIST.

## RELIEF REQUESTED

39.     The Debtor hereby requests that the Court enter an order granting the following relief:

a.      authority, pursuant to Sections 105, 361, 363, 364(c)(1), 364(c)(2) and 364(c)(3) and 364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), for the Debtor to use cash collateral and obtain post-petition loans, advances and other financial accommodations on an interim basis for a period through and including July 30, 2010, from VIST Bank. ("VIST"), pursuant to the DIP Financing Agreement between Debtor and VIST of even date (the "DIP Agreement"), secured by security interests in

B # 1131589 v.2

and liens upon all of the Collateral (as hereinafter defined) pursuant to Sections 364(c)(1)-(3) and 364(d) of the Code;

      b.    authority for Debtor to enter into the DIP Agreement, dated of even date herewith, by and between the Debtor and VIST (capitalized terms not otherwise defined in this Order shall have the respective meanings given to them in the DIP Credit Agreement);

      c.    the modification of the automatic stay to the extent hereinafter set forth;

      d.    the grant to VIST super-priority administrative claim status pursuant to Section 364(c)(1) of the Code, for the granting of liens and security interest and other adequate protection; and

      e.    the scheduling of a final hearing on the Motion.

## **BASIS FOR RELIEF**

40.    Rule 4001(b) permits a court to approve a request for authority to use cash collateral and financing during the 14-day period filing the filing of a motion requesting authority to use cash collateral and credit when necessary "to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), 4001(c)(2).

41.    Pursuant to Section 364 of the Bankruptcy Code, the court may authorize the obtaining of credit or the incurring of debt secured by a senior lien on property of the estate that is subject to a lien where the Debtor is otherwise unable to obtain such credit and there is adequate protection of the interest of the holder of the lien on property of the estate.   11 U.S.C. § 364(d).

B # 1131589 v.2

42. The ability of the Debtor to continue its business and remain an operating entity depends on its ability to obtain such financing from VIST, as no such financing is available from any other lender.

43. The loans to be advanced by VIST pursuant to the DIP Agreement will benefit the Debtor, its estate and creditors by allowing the Debtor to continue operating and generating the necessary capital to make payments to its creditors, including VIST, as well as preserving its assets and properties.

44. In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral in excess of the amount of the DIP Loan secured by such Collateral, after satisfaction of the post-petition obligations, liabilities and indebtedness of the Debtor to VIST shall constitute additional security for the repayment of the Pre-Petition Debt and adequate protection for the use by the Debtor and the diminution in value of the Collateral existing on the Petition Date.   Accordingly, the interests of the Other Lienholders will be adequately protected.

45. The terms and conditions of the DIP Agreement have been carefully negotiated and crafted to meet the standards set forth under the Bankruptcy Code.  If an interim order is entered, the Debtors will be able to maximize their business operations for the benefit of the estate.  The interests of all holders of liens on the Collateral are adequately protected.  Accordingly, the use of cash collateral and the execution of the DIP Agreement should be authorized by this Court.

**REQUEST FOR A FINAL HEARING**

46. Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtor and VIST request that the Court set a final hearing in this case in _____.

B # 1131589 v.2

**NOTICE**

47.     The Debtor has provided notice of the Motion and the relief requested thereunder, the interim hearing in respect of the Motion and the terms of this Order to (a) the Office of the United States Trustee for the Eastern District of Pennsylvania, (b) the attorneys for VIST, (c) the Debtor's twenty (20) largest unsecured creditors, (d) all creditors holding a security interest in any of the Debtor's assets, (e) the Internal Revenue Service, and (f) the Pennsylvania Department of Revenue

**NO PREVIOUS REQUEST**

48.     No previous request for the relief requested herein has been made to this or any other court.

**CONCLUSION**

WHEREFORE, the Debtors request that this Court enter an Order in the form attached hereto and for such other and further relief as this Court deems just.

| | |
|---|---|
| Dated: May 11, 2010 | Respectfully submitted, |
| | /s/ Dexter Case, Esquire |
| | Case, DiGamberardino & Lutz, P.C. |
| | 845 North Park Road, Suite 101, |
| | Wyomissing, PA 19610 |

B # 1131589 v.2