## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>DIETRICH'S SPECIALTY PROCESSING, LLC.<br><br><div align="center">Debtor.</div> | Chapter 11<br><br>Case No. 10-21399-ref |

**FINAL ORDER PURSUANT TO SECTION 364(C) AND (D) OF THE BANKRUPTCY
CODE AND RULE 4001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
(1) AUTHORIZING DEBTOR TO OBTAIN POST-PETITION FINANCING, (2)
GRANTING SENIOR LIENS AND PRIORITY ADMINISTRATIVE EXPENSE
STATUS, (3) MODIFYING THE AUTOMATIC STAY, (4) AUTHORIZING DEBTOR
TO ENTER INTO AGREEMENTS WITH THE VIST BANK, (5) AUTHORIZING USE
OF CASH COLLATERAL AND PROVIDING ADEQUATE PROTECTION**

Upon the consideration of the Motion ("Motion"), filed on May <u>11</u>, 2010, by Dietrich's

Specialty Processing, LLC, as debtor and debtor-in-possession (the "Debtor") seeking, <u>inter alia</u>:

        (a)      authority, pursuant to Sections 105, 361, 363, 364(c)(1), 364(c)(2) and

364(c)(3) and 364(d) of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code") and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure

("Bankruptcy Rules"), for the Debtor to use cash collateral and obtain post-petition loans,

advances and other financial accommodations on a final basis through and including July 30,

2010 VIST Bank ("VIST"), pursuant to the DIP Financing Agreement between Debtor and VIST

approved by this Court on May 13, 2010, as such agreement may be amended, modified or

supplemented from time to time (the "DIP Agreement"), secured by security interests in and

liens upon all of the Collateral (as hereinafter defined) pursuant to Sections 364(c)(1)-(3) and

364(d) of the Code;

(b)     authority for Debtor to enter into the DIP Agreement with VIST on a final basis (capitalized terms not otherwise defined in this Order shall have the respective meanings given to them in the DIP Credit Agreement);

(c)     the modification of the automatic stay to the extent hereinafter set forth;

(d)     the grant to VIST super-priority administrative claim status pursuant to Section 364(c)(1) of the Code, for the granting of liens and security interest and other adequate protection; and

(e)     the scheduling of a final hearing on the Motion.

IT APPEARING THAT, at or prior to the hearing on the Motion, each of the parties set forth below received actual notice of the Motion, whether by telephone, telecopy, e-mail (if agreed to by the recipient), overnight courier or by hand delivery to: (i) the Office of the United States Trustee for the Eastern District of Pennsylvania, (ii), the attorneys for VIST, (iii) the Debtor's twenty (20) largest unsecured creditors ("UST"), (iv) all creditors holding a security interest in any of the Debtor's assets, (v) the Internal Revenue Service, and (vi) the Pennsylvania Department of Revenue; and it further

APPEARING, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 10, 2010 (the "Petition Date"), and is continuing in the management and possession of its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code; and it further

APPEARING, that VIST and the Debtor have represented to this Court that, prior to the commencement of Debtor's Chapter 11 case, VIST made loans and advances, and provided other credit accommodations to and for the benefit of the Debtor, pursuant to the terms and conditions of those certain loan agreements dated April 13, 2006, November 1, 2006 and August 28, 2007

-2-

(as amended, modified and supplemented, the "Pre-petition Loan Agreement"), and certain other security agreements, mortgages, guarantees and other related agreements, documents and instruments executed and/or delivered by the Debtor with, to or in favor VIST (all of such loan and security agreements, mortgages, guarantees, financing statements and all other related agreements, documents and instruments executed in connection therewith or related thereto being referred to collectively as the "Existing Financing Agreements");

APPEARING, that the Debtor and VIST have represented to the Court that (1) the principal amount of all loans, advances and other indebtedness owed by the Debtor to VIST pursuant to the Pre-petition Loan Agreement and the other Existing Financing Agreements, and existing as of May 10, 2010, consists of loans in the aggregate principal amount of not less than $4,396,060.85, together with interest accrued and accruing thereon and fees, costs, expenses and other charges accrued and accruing with respect thereto (collectively, the "Pre-Petition Debt"), and (2) as of the Petition Date, the Pre-Petition Debt is fully secured pursuant to the Existing Financing Agreements by perfected and valid first priority security interests and liens granted by the Debtor to or for the benefit of VIST upon all of the Collateral (as defined in the Pre-petition Loan Agreement) existing as of the time immediately prior to the filing of the petitions for relief herein, and the post-petition proceeds and products thereof (collectively, together with any other property of the Debtor's estate in which a security interest or lien has been granted to or for the benefit of VIST prior to the filing of the petition for relief herein, the "Pre-Petition Collateral"); and it further

APPEARING, that the Debtor has acknowledged and agreed that: (a) the Pre-petition Loan Agreement and the other Existing Financing Agreements executed and/or delivered with, to or in favor of VIST are valid, binding and enforceable agreements and obligations of the

- 3 -

B # 1133338 v.1

Debtor, (b) the security interests and liens granted to or for the benefit of VIST upon the Pre-Petition Collateral are valid, perfected, senior to all other security interests and liens upon the Pre-Petition Collateral (except for senior liens, if any, arising by operation of law "Senior Encumbrances") and are valid, enforceable and non-voidable, (c) all of the Pre-Petition Debt constitutes allowable claims against the Debtor and is valid, enforceable and non-voidable in the amount of the Pre-Petition Debt, and (d) the Debtor does not possess and shall not assert any claim, counterclaim, setoff or defense of any kind or nature, which would in any way affect the validity, enforceability and non-avoidability of any of the Pre-Petition Debt and VIST's security interests in and liens upon the Pre-Petition Collateral, or which would in any way reduce or affect the absolute and unconditional obligation of the Debtor to pay in full, in cash all of the Pre-Petition Debt and any and all other obligations owing under the Financing Agreement (defined below); and it further

APPEARING, that the Debtor is unable to obtain unsecured credit for working capital purposes as an administrative expense of its estate; and it further

APPEARING, that without the financing proposed by the Motion and the use of cash collateral, the Debtor will not have the funds necessary to pay their payroll, payroll taxes, suppliers, overhead and other expenses necessary for the continued operation of the Debtor's business and the management and preservation of the Debtor's assets and properties; and it further

APPEARING, that the Debtor has requested that it be permitted to use cash collateral and that VIST make or cause to be made available loans and advances, and provide other financial and credit accommodations to the Debtor in order to provide funds to be used by Debtor for its

B # 1133338 v.1

general operating, working capital and other business purposes in the ordinary course of its business; and it further

APPEARING, that all such additional loans, advances and other financial accommodations by or on behalf of VIST will benefit the Debtor, its estate and creditors; and it further

APPEARING, that VIST is willing to permit the use of cash collateral and make such loans and advances and provide such other financial and credit accommodations on a secured basis as more particularly described herein and in the Interim Order (as defined below) and subject to the terms and conditions contained herein and in the Interim Order (as defined below); and it further

APPEARING, that the ability of the Debtor to continue its business and remain an operating entity depends upon the Debtor's obtaining such financing from VIST; and it further

APPEARING, that the relief requested in the Motion is necessary, essential and appropriate for the continued operation of the Debtor's businesses and the management and preservation of the Debtor's assets and properties and is in the best interests of the Debtor, its estate and creditors; and it further

APPEARING, that this Court has jurisdiction to enter this Order pursuant to 28 U.S.C. §§ 157(b)(2)(A), (D) and (M) and 1334;

NOW, THEREFORE, upon the record set forth by the Debtor, including the Motion, the filings and pleadings in this case, the record of the proceedings held before this Court with respect to the Motion, and upon completion of the interim and final hearings and sufficient cause appearing therefor, the Court finds:

B # 1133338 v.1

A.     The Debtor is unable to obtain unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code, or pursuant to Sections 364(a), (b) or (c) of the Bankruptcy Code and the other secured creditors of the Debtor will be adequately protected or consent to the financing.

B.     Under the circumstances, no other source of financing exists on terms more favorable than those offered by VIST.

C.     The Debtor has provided notice of the Motion and the relief requested thereunder and the Interim Order by telephone, telecopy, e-mail (if agreed to by the recipient), overnight courier, or by-hand delivery to (1) the UST, (2) the attorneys for VIST, (3) the Debtor's twenty (20) largest unsecured creditors, (4) all creditors holding a security interest in any of the Debtor's assets, (5) the Internal Revenue Service, and (6) the Pennsylvania Department of Revenue.

D.     In connection with the filing of the Motion, on May 13, 2010, after notice and a hearing, this Court entered an interim order pursuant to Section 363 and 364(c) and (d) of the Bankruptcy Code (1) authorizing Debtor to obtain interim post-petition financing, (2) authorizing the use of cash collateral (3) granting senior liens, replacement liens and super-priority status, (4) modifying the automatic stay (5) authorizing Debtor to enter into financing agreements with VIST and (6) prescribing form and manner of notice and time for final hearing (the "Interim Order").  Pursuant to, and in reliance upon, the entry of the Interim Order, VIST has made and continues to make advances under the DIP Agreement, including, without limitation, those advances authorized by the Interim Order with respect to repayment of the Pre-Petition Debt.

B # 1133338 v.1

E.  All findings of fact and conclusions of law contained in the Interim Order are incorporated in this Final Order by reference.

F.  Consideration of the Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2)(A), (D), (G), (K), (M) and (O). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334.

G.  Based on the record before the Court, VIST is extending financing to the Debtor in good faith and, therefore, VIST is entitled to the benefits of the provisions of Section 364(e) of the Bankruptcy Code. Based on the record before the Court, the terms of the Financing Agreements (as defined below) by and between the Debtor and VIST, pursuant to which the post-petition loans, advances or other financial and credit accommodations that have been and will be made or provided to the Debtor by VIST have been negotiated at arm's length and in good faith, as that term is defined in Section 364(e) of the Bankruptcy Code, and are in the best interest of the Debtor, its estate and its creditors, and provide the Debtor with reasonably equivalent value and fair consideration for all purposes under the Bankruptcy Code and other applicable law.

H.  Adequate notice of the final hearing requesting the entry of this Order and the hearing thereon has been provided.

I.  The relief granted by this Court pursuant to this Order is necessary to avoid immediate and irreparable harm and injury to the Debtor's estate.

J.  Adequate and sufficient cause has been shown to justify the granting of the interim relief requested herein, and the immediate entry of this Order.

K.  A committee has not been appointed in this case pursuant to Section 1102 of the Bankruptcy Code.

- 7 -

B # 1133338 v.1

ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:

1.      The Motion is GRANTED and approved to the extent provided below. This Order shall hereinafter be referred to as the "Final Order."

2.      The Debtor is hereby authorized and empowered to immediately borrow and obtain, a loan from VIST pursuant to the terms of this Final Order and the terms and conditions set forth in the DIP Agreement, such amount or amounts as may be made available to the Debtor by VIST pursuant to the terms and conditions set forth in the DIP Agreement and this Final Order, for the period commencing on the date hereof and terminating on the earliest of July 30, 2010 or the occurrence of an Event of Default or as otherwise provided in the DIP Agreement or this Order.  Without limiting the general nature of the foregoing approval, the Court specifically approves the provisions of the DIP Agreement allowing advances to be made to the Debtor based upon the assets of the Debtor and, additionally, except as otherwise set forth herein, in no event shall VIST be obligated to fund any requested advance when there has occurred an Event of Default (as defined below).

3.      The Debtor shall use cash collateral and the proceeds of the DIP Loan provided to the Debtor pursuant to the Interim Order, this Final Order and the DIP Agreement for, inter alia, the payment of employee salaries, payroll, taxes, the purchase of inventory and other general operating and working capital purposes in the ordinary course of the Debtor's business, including amounts paid for such purposes which may constitute administrative expense claims under the Bankruptcy Code attributable to the operation of Debtor's business, expenditures authorized by order of the Court and the fees of the U.S. Trustee and the Clerk of this Court, and except as otherwise set forth herein, all as provided in a cash flow budget prepared by the Debtor and attached to this Order as Exhibit (the "Budget"). In no event,

"D1-B"

- 8 -

B # 1133338 v.1

however, shall cash collateral or proceeds of loans or other extension of credit under the DIP

Agreement (or any Collateral) be used to propose or support a plan of reorganization that does

not provide for the indefeasible payment in full, in cash and satisfaction of all of the

Obligations under the DIP Agreement on the Effective Date of any such Plan, or to seek relief

under any provision of the Bankruptcy Code to the extent that such relief would in any way

restrict or impair the rights or remedies of VIST, as provided for in the Interim Order and this

Final Order (or any Order subsequently entered with respect to the matters provided for in this

Final Order), the DIP Agreement, the Financing Agreements, or VIST's exercise of any such

rights or remedies.

4.      The Debtor is authorized to execute, deliver, perform and comply with the

terms and covenants of the DIP Agreement, pursuant to which, inter alia, the Debtor shall

ratify, extend, assume, adopt and/or amend, as applicable, the Existing Financing Agreements

in a manner deemed necessary or advisable by VIST as a result of the credit to be provided

under the DIP Agreement (together with the DIP Agreement, the Existing Financing

Agreements, as applicable, and all other agreements, documents and instruments now or in the

future executed and/or delivered in connection with, or related to, the financing arrangements

between the Debtor and VIST, collectively, the "Financing Agreements").

5.      The Debtor is authorized to comply with the terms, conditions and

covenants of the DIP Agreement and the other Financing Agreements. Such terms, conditions

and covenants shall be sufficient and conclusive evidence of the borrowing arrangements

between the Debtor and VIST, and of the Debtor's assumption and adoption of the terms,

conditions and covenants of the DIP Agreement and the other Financing Agreements for all

purposes, including, without limitation, to the extent applicable, the payment of all principal,

B # 1133338 v.1

interest, commissions, fees, servicing fees, unused line fees, early termination fees, and other fees and expenses, including attorneys' fees and legal expenses, as more fully set forth in the Financing Agreements.

6. The extent, legality, validity, perfection, enforceability and other matters noted in this paragraph with respect to the Existing Financing Agreements, as well as the Pre-Petition Debt and VIST's pre-petition liens upon and security interests in the Pre-Petition Collateral, are for all purposes subject only to the rights of an Official Committee of Unsecured Creditors appointed pursuant to Section 1102 of the Bankruptcy Code (the "Committee") or, if no committee is appointed, any party in interest, until July 26, 2010, which in any way seeks to (a) challenge in any manner the Pre-Petition Debt, and/or assert claims or causes of action of any nature in any way arising out of or relating to the Pre-Petition Debt or the Existing Financing Agreements, or (b) assert or allege any other any matters in any way arising out of or relating to the Pre-Petition Debt or the Existing Financing Agreements, or (c) challenge the extent, legality, validity, perfection and/or enforceability of VIST's pre-petition liens upon and security interests in the Pre-Petition Collateral pursuant to the Bankruptcy Code. If such proceeding is not timely filed on or before July 26, 2010 (a) the Pre-Petition Debt and VIST's security interests in and liens upon the Pre-Petition Collateral shall be recognized and allowable as valid, binding, in full force and effect, not subject to any claims, counterclaims, setoff or defenses, perfected and senior to all other liens upon and claims against the Pre-Petition Collateral with respect to all parties in this case, except for senior liens expressly permitted in the Financing Agreements (to the extent such permitted liens are valid, perfected, enforceable and non-avoidable, or to the extent entitled to priority as provided in paragraph 8 below, and (b) VIST and its respective agents, officers, directors and

B # 1133338 v.1

employees shall be deemed released and discharged from all claims and causes of action arising out of or in any way relating to the Existing Financing Agreements entered into with the Debtor prior to the entry of this Final Order. Nothing in this Final Order shall be deemed to confer or deny standing to commence any action or proceeding on either the Committee, or any other party-in-interest.

7.      As partial adequate protection for the use of cash collateral and to secure the prompt payment and performance of any and all obligations, liabilities and indebtedness of the Debtor to VIST of whatever kind or nature or description, absolute or contingent, now existing or hereafter arising, including, without limitation, to the fullest extent applicable, all Pre-Petition Debt and all post-petition obligations, liabilities and indebtedness of any Debtor to VIST arising under the Financing Agreements (collectively, the "DIP Loan Obligations"), VIST shall have and is hereby granted pursuant to Sections 361 and 364(d)(1) of the Bankruptcy Code, effective on and after the date of this Final Order, valid and perfected first priority security interests and liens, subject to the Carve-Out but otherwise superior to all other creditors of Debtor's estate, except for Statutory Encumbrances (as defined in the DIP Agreement) to the extent entitled to priority as provided in paragraph 8 below, in and upon all of the existing and future assets and properties of the Debtor, whether acquired prior to, concurrently with or after the filing of the petition commencing Debtor's Chapter 11 case (collectively, the "Collateral"), including, without limitation, and by way of general description (with terms below having, as applicable, the meaning given to them in the Uniform Commercial Code):

(a)      All of the assets defined in the DIP Agreement as "Collateral;"

B # 1133338 v.1

(b)    all present and future accounts and accounts receivable;

(c)    all other present and future general intangibles (including intellectual property and existing and future leasehold interests in equipment, real estate and fixtures), chattel paper, documents, instruments, investment property (including securities, whether certificated or uncertificated, securities accounts, security entitlements, commodity contracts or commodity accounts), letters of credit, bankers' acceptances and guaranties;

(d)    all present and future monies, securities and other investment property, credit balances, deposits, deposit accounts and other property of the Debtor now or hereafter held or received by or in transit to VIST or at any other depository or other institution from or for the account of the Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise, and all present and future liens, security interests, rights, remedies, title and interest in, to and in respect of accounts, accounts receivable and other Collateral, including, without limitation, (A) rights and remedies under or relating to guaranties, contracts of suretyship, letters of credit and credit and other insurance related to the Collateral, (B) rights of stoppage in transit, replevin, repossession, reclamation and other rights and remedies of an unpaid vendor, lienor or secured party, (C) goods described in invoices, documents, contracts or instruments with respect to, or otherwise representing or evidencing accounts, accounts receivable or other Collateral, including, without limitation, returned, repossessed and reclaimed goods, and (D) deposits by and property of account debtors or other persons securing the obligations of account debtors;

(e)    all inventory;

(f)    all equipment;

(g)    all real property;

- 12 -

(h)     all leasehold interests;

(i)     all books and records; and

(j)     all products and proceeds of the foregoing, in any form, including, without limitation, insurance proceeds and all claims against third parties for loss or damage to or destruction of any or all of the foregoing. Notwithstanding anything to the contrary set forth in the Interim Order or the Final Order, the Collateral shall not include any claims, rights, interests, assets and properties (recovered by or on behalf of any Debtor or any trustee of any Debtor (whether in the Chapter 11 Case or any subsequent case to which the Chapter 11 Case is converted), including, without limitation, all property recovered as a result of transfers or obligations avoided or actions maintained or taken pursuant to Sections 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and including, without limitation, Avoidance Action Recoveries (as defined in the DIP Agreement).

8.     Notwithstanding anything to the contrary set forth in this Final Order, including paragraph 7 of this Final Order, VIST's security interests in and liens upon the Collateral shall not have priority over (a) Statutory Encumbrances, (b) the fees of the Clerk of the Bankruptcy Court for the Eastern District of Pennsylvania and the Office of the United States Trustee and the Carve-Out (as defined below), as specifically provided for and only to the extent specifically set forth or referred to in paragraph 17 of this Final Order.

9.     VIST is authorized to apply a $78,000.00 initial advance under the DIP Agreement to repay in full all accrued pre-petition interest on the Pre-Petition Debt and future advances under the DIP Agreement and cash collateral to post-petition interest on the Pre-Petition Debt and the DIP Financing in accordance with the Budget.

B # 1133338 v.1

10. In accordance with Sections 552(b) and 361 of the Bankruptcy Code, the value, if any, in any of the Collateral, in excess of the amount of the DIP Loan secured by such Collateral, after satisfaction of the post-petition obligations, liabilities and indebtedness of the Debtor to VIST shall constitute additional security for the repayment of the Pre-Petition Debt and adequate protection for the use by the Debtor and the diminution in the value of the Collateral existing on the Petition Date.

11. This Final Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the post-petition security interests in and liens upon the property of Debtor's estate granted to VIST as set forth herein and in the Financing Agreements, without the necessity of filing, recording or serving any financing statements, mortgages or other documents which may otherwise be required under federal or state law in any jurisdiction, or the taking of any other action to validate, reaffirm or perfect the post-petition security interests and liens granted in the Interim Order, this Final Order and the Financing Agreements. If VIST shall, in its discretion, elect for any reason to file any such financing statements, mortgages or other documents with respect to such security interests and liens, the Debtor is authorized to execute, or cause to be executed, all such financing statements, mortgages or other documents upon VIST's reasonable request, and the filing, recording or service thereof (as the case may be) of such financing statements, mortgages or similar documents shall be deemed to have been made at the time of and on the Petition Date. VIST may, in its discretion, file a certified copy of this Final Order in any filing or recording office in any county or other jurisdiction in which any Debtor has an interest in real or personal property and, in such event, the subject filing or recording office is authorized to file or record such certified copy of this Final Order in accordance with applicable law.

- 14 -

B # 1133338 v.1

12.     The Debtor and VIST are authorized to implement after the entry of this
Final Order, in accordance with the terms of the Financing Agreements, any amendments to
and modifications of any of the Financing Agreements without further order of the Court on
the following conditions: (1) the amendment or modification does not constitute a material
change to the terms of the Financing Agreements (and, for purposes of this Order, a "material
change" shall mean a change that operates to (i) increase the rate of interest other than as
currently provided in the Financing Agreements, (ii) add specific additional events of default,
(iii) increases the aggregate amount of the commitments or (iv) enlarges the nature and extent
of default remedies available to VIST following an event of default), and (2) copies of the
amendment or modification must be served upon counsel for the Committee, if any, counsel
for all secured creditors and the UST.   Any amendment or modification that constitutes a
material change, to be effective, must be approved by the Court.

13.     The Debtor is authorized to perform all acts, and execute and comply with
the terms of such other documents, instruments and agreements, in addition to the above
Financing Agreements, as VIST may reasonably require as evidence of and for the protection
of the DIP Loan, the Collateral, or which may be otherwise deemed necessary by VIST to
effectuate the terms and conditions of the Interim Order, this Final Order and the Financing
Agreements, each of such documents, instruments, and agreements executed and delivered to
VIST being included in the definition of "Financing Agreements" contained herein.

14.     The Debtor is authorized, without further order of this Court, to pay or
reimburse VIST for all present and future reasonable costs and expenses, including reasonable
professional fees and legal expenses paid or incurred by VIST to effectuate the financing
transactions as provided in this Final Order and the Financing Agreements, all of which are

B # 1133338 v.1

and shall be included as part of the principal amount of the DIP Loan Obligations, and shall be secured by the Collateral.

15.    Except as it relates to VIST's rights under paragraph 20 below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit VIST to implement the terms and conditions of the Financing Agreements and this Final Order.

16.    As additional adequate protection for the use of cash collateral and security for all of the DIP Loan Obligations of the Debtor to VIST, now existing or hereafter arising pursuant to the Interim Order, this Final Order, the Financing Agreements or otherwise, and in addition to the foregoing, VIST is granted an allowed super-priority administrative claim in accordance with Sections 361 and 364(c)(1) of the Bankruptcy Code having priority in right of payment over any and all other obligations, liabilities and indebtedness of the Debtor now in existence or hereafter incurred by any Debtor and over any and all administrative expenses or priority claims of the kind specified in, or ordered pursuant to, Sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a) and 507(b) of the Bankruptcy Code, subject only to the Carve-Out.

17.    VIST agrees to advance under the DIP Loan or from the proceeds of its Collateral, upon the earlier of (x) the date on which the Debtor's case is converted to a case under Chapter 7 of the Bankruptcy Code, and (y) the termination of the financing to the Debtor contemplated hereby and (z) the date payment of the following professional fees are authorized (such date, the "Carve-Out Funding Date"), as required by this Final Order or a Final Order, a "Carve-Out," limited in the aggregate to the lesser of: (i) the sum of (A) up to $78,000 in accrued, unpaid fees and expenses for Debtor's counsel, plus (B) up to $52,000 in

B # 1133338 v.1

accrued, unpaid fees and expenses for Penn Hudson, Debtor's management consultant, plus

(C) up to $26,000 in accrued, unpaid fees and expenses for Debtor's outside accountant, plus

(D) up to $40,000 in accrued, unpaid fees and expenses for Committee professionals, plus (E)

up to $15,000 for fees payable pursuant to 28 U.S.C. § 1930(a)(6) ("UST Fees"), collectively

subject to an aggregate cap of up to $198,000, in all events only with respect to the foregoing

fees and expenses which are incurred on and after the Petition Date and before the Carve-Out

Funding Date and from which aggregate cap amount of $198,000 VIST shall be entitled to

credit all payments actually received by professionals after the Petition Date regardless when

after the Petition date and before the Carve-Out Funding Date such fees are incurred, and

VIST acknowledges that such fees and expense may have been incurred or accrued in weeks

other than the weeks in which they are reflected in the Budget; or (ii) the sum of (A) UST Fees

plus (B) "Priority Professional Expenses" (as defined in the DIP Agreement) plus (C) all

allowed Chapter 11 administrative expenses arising in this case through the earlier of (x) the

date on which the Debtor's case is converted to a case under Chapter 7 of the Bankruptcy

Code, and (y) the termination of the financing to the Debtor contemplated hereby for the

payment UST Fees, Priority Professional Fees and allowed administrative expenses.  For the

avoidance of doubt, in the event that accrued fees and expenses for which  a Carve-Out

payment was made or funded is disallowed by the Court after notice and a hearing, then such

professional shall return to VIST any funds received in excess of the amount actually allowed.

For administrative convenience, VIST shall be entitled to make any and all payments of

Carve-Out amounts or Priority Professional Expenses directly to the applicable professionals

and all such funds paid shall constitute Obligations (as defined in the DIP Agreement) of the

Debtor.  Notwithstanding anything to the contrary herein, the liens granted to VIST under this

Final Order and any subsequent Final Order shall be subject and subordinate to the payment of the Carve-Out to the extent that there are not sufficient unencumbered assets in the Debtor's estate or retainers to satisfy such expenses. Other than with respect to the Carve-Out as aforesaid, neither VIST nor the Collateral shall be responsible for the payment or reimbursement of any fees or disbursements of any professionals or any administrative expenses incurred in connection with the Chapter 11 case or any succeeding case under the Bankruptcy Code. Except as provided for herein, no other claim shall be granted or allowed priority superior to or pari passu with the priority of the claims of VIST granted by this Final Order while any Obligation of the Debtor to VIST remains outstanding or, if there are no DIP Loan Obligations outstanding, loans or other extensions of credit remain available under the DIP Agreement. The Carve-Out shall not be used to pay any Ineligible Professional Expenses (as defined in the DIP Agreement).

18.     Except as expressly permitted under the DIP Agreement, the Debtor shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral without the prior written consent of VIST (and no such consent shall be implied, from any other action, inaction or acquiescence by VIST) except for sales of Debtor's Inventory in the ordinary course of its business.

19.     Except with respect to the Carve-Out and fees and expenses of the Clerk of the Court and the Office of the UST, no costs or expenses of administration which have or may be incurred in Debtor's Chapter 11 case, any conversion of any Debtor's Chapter 11 case pursuant to Section 1112 of the Bankruptcy Code, pursuant to Sections 105, 506(c) or Section 552(b) of the Bankruptcy Code, or otherwise, or in any future proceedings or cases related thereto, shall be charged against VIST, its claims, or the Collateral, without the prior written

B # 1133338 v.1

consent of VIST, and no such consent shall be implied from any other action, inaction or acquiescence by VIST, and no obligations incurred or payments or other transfers made by or on behalf of the Debtor on account of the financing arrangements with VIST shall be avoidable or recoverable from VIST under Sections 547, 548, 550, 553, or any other provision of the Bankruptcy Code.

20.    In the event of the occurrence of any of the following: (a) the failure of the Debtor to perform in any material respect any of its obligations pursuant to the Interim Order or this Final Order (b) the conversion of this case to a Chapter 7 or the dismissal of this Case, (b) the occurrence of any "Event of Default" under the Financing Agreements, including the failure to comply with or perform any of the terms and conditions of the DIP Agreement or the other Financing Agreements (the foregoing being referred to in this Final Order, individually, as an "Event of Default" and collectively, as "Events of Default") then (unless such Event of Default is specifically waived in writing by VIST, as required by the DIP Agreement, and which waiver shall not be implied from any other action, inaction or acquiescence by VIST) and upon or after the occurrence of any of the foregoing, and at all times thereafter, after giving five (5) days notice in writing, served by overnight delivery service or telecopy, to the Debtor's counsel, counsel to the Committee, counsel for all secured creditors, the UST, the Court and by facsimile to the Debtor at 610-582-1482 Attention:  Thomas Dietrich, President: (i) all of the DIP Loan Obligations shall become immediately due and payable, (ii) the automatic stay provided for pursuant to Section 362 of the Bankruptcy Code and any other restrictions on the enforcement by VIST of its liens upon and security interests in the Collateral (or any other rights under the Financing Agreements granted to or for the benefit of VIST or pursuant to the Interim Order and/or this Final Order) shall be automatically vacated

- 19 -

and modified without any further action being required, and (iii) VIST, without further notice, hearing or approval of this Court, shall be, and is hereby authorized, in its discretion, to take any and all actions or remedies which they may deem appropriate to proceed against and realize upon the Collateral and any other property of any or all of the Debtor's estate upon which VIST has been or may hereafter be granted liens and security interests to obtain repayment of the DIP Loan Obligations. Except as specifically set forth herein, VIST shall have no obligation to lend or advance any additional funds to the Debtor, or provide other financial accommodations to the Debtor, upon or after the occurrence of an Event of Default.

21.     Upon the expiration of the Debtor's authority to borrow and obtain other credit accommodations from VIST, as applicable, pursuant to the terms of the Interim Order, and after giving five (5) days notice in writing sent by overnight delivery service, facsimile or e-mail to the Debtor's counsel, counsel to the Committee, counsel to all secured creditors, the United States Trustee, the Court and by facsimile to the Debtor at 610-582-1481 Attention: Thomas Dietrich, President, unless an Event of Default set forth in paragraph 20 above occurs sooner and the automatic stay has been lifted or modified, all of the DIP Loan Obligations shall immediately become due and payable, and VIST shall be automatically and completely relieved from the effect of any stay under Section 362 of the Bankruptcy Code or any other restriction on the enforcement of its liens upon and security interests in the Collateral or any other rights granted to VIST pursuant to the terms and conditions of the Financing Agreements and this Final Order, and VIST shall be and are hereby authorized, in its discretion, to take any and all actions and remedies which they may deem appropriate and to proceed against and realize upon the Collateral and any other property of the Debtor's estate.

- 20 -

B # 1133338 v.1

22.     The Debtor shall not, without the consent of the VIST, enter into any agreement to return any inventory to any of their creditors for application against any pre-petition indebtedness under Section 546(h) of the Bankruptcy Code, or consent to any creditor taking any setoff against any of its pre-petition indebtedness based upon any such return pursuant to Section 553(b)(1) of the Bankruptcy Code, or otherwise.

23.     In consideration of VIST making post-petition loans, advances and providing other credit and financial accommodations to the Debtor pursuant to the provisions of the Financing Agreements and this Final Order, the Debtor and its successors and assigns, (collectively, the "Releasors"), but without prejudice to the rights of the Committee and other parties in interest to assert claims on behalf of the Debtor's estate as provided in paragraph 6, above, shall and do forever release, discharge and acquit the VIST and its respective officers, directors, agents, attorneys and predecessors-in-interest (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, of every kind, nature and description, including, without limitation, any so-called "lender liability" claims or defenses, that Releasors had, have or hereafter can or may have against Releasees as of the date hereof, in respect of events that occurred on or prior to the date hereof with respect to the Debtor, the Pre-Petition Debt, the Financing Agreements or other financial accommodations made by VIST to Debtor pursuant to the Financing Agreements. In addition, upon the payment in full, in cash of all DIP Loan Obligations owed to VIST by the Debtor, and termination of the rights and obligations arising under the Financing Agreements, the Interim Order and this Final Order, Releasees shall be released from any and all obligations, liabilities, actions, duties, responsibilities and causes of

B # 1133338 v.1

action arising or occurring in connection with or related to the Financing Agreements, the Interim Order and/or this Final Order on terms and conditions acceptable to VIST.

24.    Until all of the DIP Loan Obligations shall have been indefeasibly paid in full, in cash and satisfied, and without further order of the Court: (a) no other party shall foreclose or otherwise seek to enforce any lien or other right such other party may have in and to any property of Debtor's estate upon which VIST holds or asserts a lien or security interest; (b) upon and after the occurrence of an Event of Default, VIST, in connection with a liquidation of any of the Collateral may (i) enter upon, occupy and use any real property, equipment, leasehold interests, warehouse arrangements, trademarks, tradenames, copyrights, licenses, patents or any other assets of Debtor, which are owned by or subject to a lien of any third party and which are used by Debtor in its business, all without interference from the respective lessors, licensors or other third parties for the purpose of repossessing Debtor's assets and properties.

25.    All post-petition Revolving Loans under the DIP Agreement are made in reliance on the Interim Order and this Final Order, as applicable, and there shall not at any time be entered in any Debtor's Chapter 11 case any order which (a) authorizes the use of cash collateral of any Debtor in which VIST has an interest, or the sale, lease, or other disposition of property of the Debtor's estate in which the VIST has a lien or security interest, or (b) authorizes the obtaining of credit or the incurring of indebtedness under Section 364 of the Bankruptcy Code secured by a lien or security interest which is equal or senior to a lien or security interest in property in which VIST holds a lien or security interest, or which is entitled to priority administrative claim status which is equal or superior to that granted to VIST herein, unless, in each instance (i) VIST shall have given its express prior written consent

B # 1133338 v.1

thereto,[1] no such consent being implied from any other action, inaction or acquiescence by VIST, or (ii) such other order requires that the DIP Loan Obligations, without limitation, shall first be indefeasibly paid in full, in cash, including all debts and obligations of the Debtor to VIST which arise or result from the obligations, loans, security interests and liens authorized herein. The security interests and liens granted to or for the benefit of VIST hereunder and the rights of VIST pursuant to the Interim Order and this Final Order with respect to the DIP Loan Obligations and the Collateral are cumulative, and shall not be altered, modified, extended, impaired, or affected by any plan of reorganization of the Debtor and, in the event VIST shall, in its sole discretion, expressly consent in writing that the DIP Loan Obligations shall not be repaid in full, in cash, upon confirmation thereof, shall continue after confirmation and consummation of any such plan.

26.    To the fullest extent permitted by applicable law, the provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered (a) converting any Debtor's Chapter 11 case to a Chapter 7 case, (b) confirming or consummating any plan of reorganization of any Debtor or (c) dismissing any Debtor's Chapter 11 case or any subsequent Chapter 7 case pursuant to Sections 303, 305 or 1112 of the Bankruptcy Code, and the terms and provisions of this Final Order, as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Order, this Final Order and the Financing Agreements shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by the Interim Order and this Final Order until all DIP Loan

---

[1]    Matters pertaining to the consent, agreement or other similar matters as referred to in this Final Order are governed by the provisions of the DIP Agreement in that regard.

B # 1133338 v.1

Obligations are indefeasibly paid in full, in cash and satisfied; provided, that, all obligations and duties of VIST hereunder, under the Interim Order, under the Financing Agreements or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any termination date provided in the DIP Agreement, the occurrence of any Event of Default or the date that a plan of reorganization of the Debtor becomes effective, unless VIST has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by VIST. Any Order dismissing the Debtor's case shall be deemed to provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (a) the superpriority claim provided for in the Interim Order and this Final Order, as well as VIST's liens on and security interest in the Collateral shall continue in full force and effect notwithstanding such dismissal until all Bank Indebtedness is indefeasibly paid in full, in cash and satisfied, and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the superpriority claim and such liens and security interest in the Collateral.

27.     The provisions of this Final Order shall inure to the benefit of the Debtor and VIST, shall be binding upon the Debtor, VIST and each of their respective successors and assigns, including any trustee, examiner or other fiduciary hereafter appointed as a legal representative of the Debtor or with respect to property of the Debtor's estate, whether under Chapter 11 of the Bankruptcy Code or any subsequent Chapter 7 case, and shall also be binding upon all creditors of the Debtor and other parties in interest.

28.     The provisions of this Final Order shall be effective immediately upon entry of this Final Order pursuant to Section 364 of the Bankruptcy Code and Bankruptcy Rule 6004(h), 7062 and 4001(c)(2) by the Court, and any actions taken pursuant thereto shall

B # 1133338 v.1

survive entry of, and shall govern with respect to any conflict with, any Order which may entered confirming any plan of reorganization, dismissing the Chapter 11 Case pursuant to Sections 303, 305 or 1112 of the Bankruptcy Code, or converting the Chapter 11 Case from Chapter 11 to Chapter 7, and the terms and provisions of this Final Order as well as the priorities in payment, liens, and security interests granted pursuant to the Interim Order, this Final Order and the Financing Agreements shall continue in this or any superseding case under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by the Interim Order and this Final Order until all DIP Loan Obligations are indefeasibly paid in full, in cash and satisfied; provided, that, all obligations and duties of VIST hereunder, under the Interim Order, under the Financing Agreements or otherwise with respect to any future loans and advances or otherwise shall terminate immediately upon the earlier of the date of any termination date provided in the DIP Agreement, the occurrence of any Event of Default, or the date that a plan of reorganization of the Debtor becomes effective unless VIST has given its express prior written consent thereto, no such consent being implied from any other action, inaction or acquiescence by VIST.

29.    The Debtor irrevocably waive any right to seek any modifications or extensions of this Final Order without the prior written consent of VIST, as applicable, and no such consent shall be implied by any other action, inaction or acquiescence by VIST.

30.    To the extent the terms and conditions of the Financing Agreements and/or the Interim Order are in direct conflict or otherwise inconsistent with the terms and conditions of this Final Order, the terms and conditions of this Final Order shall control.

31.    The terms of the financing arrangements and the Financing Agreement between the Debtor and VIST have been negotiated in good faith and at arms' length and any

B # 1133338 v.1

loans, advances or other financial and credit accommodations which are made or caused to be

made to the Debtor pursuant to the Financing Agreements are deemed to have been extended

in good faith, as the term "good faith" is used in Section 364(e) of the Bankruptcy Code, and

shall be entitled to the full protection of Section 364(e) of the Bankruptcy Code in the event

that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or

otherwise.

32.    Unless and to the extent expressly modified by this Final Order, the

findings, authorizations, protections and provisions contained in the Interim Order shall

remain in full force and effect.

Dated: ___June 10___, 2010
Reading, Pennsylvania

_____
Richard E. Fehling, U.S. Bankruptcy Judge

B # 1133338 v.1

Dietrich's Specialty Processing, LLC   Page 1   Printed 5/10/2010   PRELIMINARY-FOR DISCUSSION ONLY-NOT FOR DISTRIBUTION

($000)

| | Opening Balance 4/30/2010 | 1 W/E 5/7/2010 | 2 W/E 5/14/2010 | 3 W/E 5/21/2010 | 4 W/E 5/28/2010 | 5 W/E 6/4/2010 | 6 W/E 6/11/2010 | 7 W/E 6/18/2010 | 8 W/E 6/25/2010 | 9 W/E 7/2/2010 | 10 W/E 7/9/2010 | 11 W/E 7/16/2010 | 12 W/E 7/23/2010 | 13 W/E 7/30/2010 | W/E 8/6/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Cash-BB (DIP Outstanding)** | - | (22) | (251) | (317) | (302) | (309) | (284) | (292) | (279) | (361) | (395) | (420) | (383) | (412) | |
| **Cash In:** | | | | | | | | | | | | | | | |
| Accounts Receivable-BB | 265 | 265 | 258 | 308 | 344 | 315 | 294 | 317 | 282 | 294 | 342 | 367 | 370 | 394 | 352 |
| Sales | | 38 | 88 | 124 | 104 | 83 | 106 | 71 | 83 | 80 | 105 | 108 | 132 | 103 | 105 |
| Collections | | 45 | 38 | 88 | 133 | 104 | 83 | 106 | 71 | 32 | 80 | 105 | 108 | 145 | 132 |
| Accounts Receivable-EB | | 258 | 308 | 344 | 315 | 294 | 317 | 282 | 294 | 342 | 367 | 370 | 394 | 352 | 325 |
| **Cash Out:** | | | | | | | | | | | | | | | |
| **Cost of Goods Sold** | | | | | | | | | | | | | | | |
| Material | | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 6 | 8 | 8 | 8 | 8 | 8 | 8 |
| Direct Labor | | 12 | 12 | 12 | 12 | 10 | 10 | 10 | 10 | 13 | 13 | 13 | 13 | 13 | 13 |
| Temporary Employment-Direct Labor | | | | | | | | | | | | | | | |
| Energy | | - | 33 | 33 | 33 | - | - | 35 | 35 | 35 | 36 | 36 | 36 | 36 | 36 |
| Indirect Labor and Supervision | | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 4 | 5 | 5 | 5 | 5 | 5 | 5 |
| Temporary Employment-Indirect Labor | | 0 | 4 | 4 | 4 | 6 | 6 | 6 | 6 | 8 | 8 | 8 | 8 | 8 | 8 |
| Payroll Taxes and Benefits | | 8 | 0 | 8 | 0 | 6 | 6 | 15 | 6 | 15 | 8 | 8 | 8 | 8 | 8 |
| Other Utilities | | - | 14 | 2 | 14 | - | - | - | - | - | - | - | - | - | - |
| Maintenance | | 2 | 2 | 2 | 2 | 1 | 1 | 15 | 1 | 15 | 2 | 2 | 2 | 2 | 2 |
| Testing | | 1 | 1 | 1 | 2 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Chemicals | | 1 | 1 | 1 | 1 | 1 | 1 | 5 | 1 | 5 | 1 | 5 | 1 | 5 | 1 |
| Freight | | 4 | 1 | 1 | 4 | 1 | 1 | 5 | 1 | 5 | 5 | 5 | 5 | 5 | 5 |
| Warehousing | | - | 4 | - | - | - | - | - | - | - | - | - | - | - | - |
| Equipment Lease | | - | - | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Manufacturing Supplies | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Facility Services | | 1 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Miscellaneous | | 0 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 0 | 0 | 1 | 1 | 0 | 0 |
| Total Cost of Goods Sold | | 36 | 86 | 34 | 86 | 31 | 30 | 85 | 30 | 85 | 41 | 97 | 39 | 97 | 41 |

EXHIBIT
D 1-13
Bloomberg No. 6119

Source for Data and Assumptions: Dietrich's Specialty Processing, LLC

...ich's Specialty Processing, LLC Page 2 Printed 5/10/2010 PRELIMINARY-FOR DISCUSSION ONLY-NOT FOR DISTRIBUTION

| ($000) | Opening Balance 4/30/2010 | W/E 5/7/2010 | W/E 1 5/14/2010 | W/E 2 5/21/2010 | W/E 3 5/28/2010 | W/E 4 6/4/2010 | W/E 5 6/11/2010 | W/E 6 6/18/2010 | W/E 7 6/25/2010 | W/E 8 7/2/2010 | W/E 9 7/9/2010 | W/E 10 7/16/2010 | W/E 11 7/23/2010 | W/E 12 7/30/2010 | W/E 13 8/6/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Selling and Administration | | | | | | | | | | | | | | | |
| Salaries and Commissions | | 11 | 11 | 11 | 11 | 8 | 8 | 8 | 8 | 8 | 11 | 11 | 11 | 11 | 11 |
| Payroll Taxes and Benefits | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Commissions-Manufacturing Reps | | | | | | | | | | | | | | | |
| Travel | | | | | | | | | | | | | | | |
| Vehicle Expense | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| General Liability and PC Insurance | | | | | | | | | | | | | | | |
| Worker Comp Insurance | | 6 | | | | 6 | | | | 6 | | | | 6 | 6 |
| Other Insurance | | | | | | | | | | | | | | | |
| Other Taxes | | | | | | | | | | | | | | | |
| Membership Dues | | | | | | | | | | | | | | | |
| Marketing and Other General Expenses | | 1 | 1 | 1 | 1 | 0 | 0 | 0 | 0 | 1 | 1 | 1 | 1 | 1 | 1 |
| Professional Fees-Other | | 3 | 3 | 3 | 3 | 3 | 2 | 2 | 2 | 3 | 3 | 3 | 3 | 3 | 3 |
| Property Taxes | | | | | | | | | | | | | | | |
| Recruiting | | | | | | | | | | | | | | | |
| Telephone | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Computer | | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Training | | | | | | | | | | | | | | | |
| Certification | | 2 | | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 1 | 1 | 1 | 2 | 2 |
| Bank Fees | | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Other Taxes | | | | | | | | | | | | | | | |
| Producer Security | | | | | | | | | | | | | | | |
| Miscellaneous | | | | | | | | | | | | | | | |
| Total Selling and Administration | | 31 | 17 | 17 | 17 | 27 | 14 | 14 | 14 | 31 | 18 | 18 | 18 | 18 | 31 |
| Non-Operating Cash Items | | | | | | | | | | | | | | | |
| Total Non-Operating Cash Items | | | | | | | | | | | | | | | |
| Financing Cash Items | | | | | | | | | | | | | | | |
| Total Financing Cash Items | | | | 78 | | 28 | | | | 28 | | | | | 29 |
| Critical Vendor Payments (Schedule A) | | | 145 | 10 | | 11 | | | | | | | | 45 | |
| Professional Fees | | | | | | | | | | | | | | | |
| Total Professional Fees | | | 18 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 15 | 18 |
| Total Cash Out | | 67 | 267 | 154 | 118 | 112 | 58 | 113 | 58 | 113 | 115 | 129 | 71 | 174 | 119 |
| Net Change in Cash | | (22) | (229) | (66) | (15) | (8) | 25 | (7) | 13 | (82) | (35) | (24) | 37 | (29) | 13 |
| Cash-EB (DIP Outstanding) | | (22) | (251) | (317) | (302) | (309) | (284) | (292) | (279) | (361) | (395) | (420) | (383) | (412) | (399) |

Source for Data and Assumptions: Dietrich's Specialty Processing, LLC